UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISHA WILSON OBO J.J.W., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL SECURITY, § <br> § <br> Defendant. § | Case # 1:19-cv-737-DB <br><br> MEMORANDUM DECISION <br> AND ORDER |

## INTRODUCTION

Plaintiff Denisha Wilson ("Plaintiff") brings this action on behalf of J.J.W., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying J.J.W.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order. *See* ECF No. 16. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 14. Plaintiff also filed a reply. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion (ECF No. 10) is **DENIED**, and the Commissioner's motion (ECF No. 14) is **GRANTED**.

## BACKGROUND

On November 3, 2015, Plaintiff protectively filed an application for SSI child's benefits on behalf of her daughter, J.J.W., alleging disability beginning September 23, 2015, due to attention deficit hyperactivity disorder ("ADHD"). Transcript ("Tr.") 58, 149-54, 185. The Application was initially denied February 16, 2016, after which Plaintiff timely requested a hearing. Tr. 67-71, 74-76.

On May 3, 2018, Administrative Law Judge Lisa B. Martin (the "ALJ") presided over an administrative hearing via video from Falls Church, Virginia. Tr. 15. Plaintiff and J.J.W. appeared in West Seneca, New York, and were represented by Nicholas Divirgilio, an attorney. Tr. 15, 33-57. On August 21, 2018, the ALJ issued an unfavorable decision, finding J.J.W. not disabled. Tr. 15-29. On April 9, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's August 21, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use

the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and

medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her August 21, 2018 decision:

1. The claimant was born on February 22, 2010. Therefore, she was a preschooler on September 23, 2015, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2));

2. The claimant has not engaged in substantial gainful activity since September 23, 2015, the application date (20 CFR 416.924(b) and 416.971 *et seq*.);

3. The claimant has the following severe impairments: speech/language disorder and attention-deficit/hyperactivity disorder ("ADHD") (20 CFR 416.924(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926);

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a);

6. The claimant has not been disabled, as defined in the Social Security Act, since September 23. 2015, the date the application was filed (20 CFR 416.924(a)).

Tr. at 15-29.

Accordingly, the ALJ determined that, for the application for SSI, protectively filed on September 23. 2015, J.J.W.is not disabled under section 1614(a)(3)(C) of the Act. Tr. 29.

## ANALYSIS

Plaintiff argues that the ALJ the ALJ did not properly evaluate two of the six domains described above: (a) acquiring and using information; and (b) attending and completing tasks. *See* ECF No. 10-1 at 6-10. Plaintiff makes no objections to the ALJ's findings with respect to the other four domains. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff had no limitation or less than marked limitation in these two domains, and the ALJ thoroughly discussed the evidence that supported her findings.

In September 2015, J.J.W. was placed under an individualized education program ("IEP") at school. Tr. 163-76. From approximately May 2015 to December 2017, J.J.W. received treatment, including treatment for ADHD, from Kenwood Pediatrics. Tr. 285- 310. In September 2017, Robert Kuchuk, M.D. ("Dr. Kuchik") prescribed Adderall. Tr. 289-90. During a medication follow-up visit less than two months later in November 2015, Plaintiff stated "she thinks [J.J.W.] needs a higher dose," but she was "doing fine." Tr. 292. The treatment record from that visit also indicates that J.J.W. was doing better in school. *Id*.

In June 2016, at her six-year-old well child visit, J.J.W. began seeing Grace Dimitroff, M.D. ("Dr. Dimitroff"), at Kenwood Pediatrics. Tr. 296-98. Dr. Dimitroff described J.J.W. as generally well behaved with no behavior problems and rare temper tantrums. Tr. 296. She could recognize letters and numbers, count ten objects, tell her left from right, do chores at home, and write her name. *Id*. She passed kindergarten with satisfactory grades and was adjusting well to school without behavior or attention issues. *Id*. Dr. Dimitroff noted that J.J.W. could keep up with other children, did well at school, finished homework and tests, and got along with her peers and teachers (Tr. 296), and overall, she showed appropriate behavior for her age (Tr. 297).

In November 2016, J.J.W. continued taking Adderall and had average performance in first grade. Tr. 299. She could keep up with other children, did well at school, finished homework and tests, got along with peers and teachers, and did not have behavior or attention issues. *Id*. In March 2017, Dr. Dimitroff noted that J.J.W. took medication only on school days. Tr. 301. In July 2017, at J.J.W.'s seven-year-old well child visit, Dr. Dimitroff noted that J.J.W. did not take Adderall over the summer. Tr. 303-04. Her behavior was described as generally happy and content, with rare temper tantrums. Tr. 303. She was able to read, write, and ride a bike, and she passed first grade with average performance and no behavior or attention issues. *Id*. Overall, Dr. Dimitroff noted that J.J.W. was "[d]oing fine in school since start[ing] meds." *Id*. In December 2017, Dr. Dimitroff noted that J.J.W. took Adderall only on school days and was "doing well." Tr. 306-07. She had no specific complaints, and, according to Plaintiff, she had "improved remarkedly." Tr. 306. Plaintiff said J.J.W. had no issues at school, her performance was average, and she could finish tests and homework with no behavior or attention issues. *Id*.

In December 2015, Bethany Pfizinger ("Ms. Pfizinger"), J.J.W.'s kindergarten special education teacher, completed a teacher questionnaire form at the request of the state agency. Tr. 195-202. Ms. Pfizinger indicated that J.J.W. performed "slightly below" grade level in reading and writing and "at grade level" in math. Tr. 195. In the area of attending and completing tasks, Ms. Pfizinger indicated that J.J.W. had between "no problem" and "a slight problem" overall. Tr. 197. Ms. Pfizinger stated that J.J.W.'s focusing had "greatly improved." and she was "able to maintain focus during most lessons and complete tasks with minimal reminders." *Id*.

In the area of acquiring and using information, Ms. Pfizinger indicated that J.J.W. had an overall "slight problem" (Tr. 196). Of the 10 listed activities related to acquiring and using information, Ms. Pfizinger listed J.J.W. as having "an obvious problem" in providing organized oral explanations and adequate descriptions; "no problem" in comprehending and doing math

6

problems; and "a slight problem" in the remaining eight activities: (1) comprehending oral instructions; (2) understanding school and content vocabulary; (3) reading and comprehending written material; (4) understanding and participating in class discussions; (5) expressing ideas in written form; (6) learning new material; (7) recalling and applying previously learned material; and (8) applying problem-solving skills in class discussions. Tr. 196.

In February 2016, state agency consultant J. Ochoa, Ph.D. ("Dr. Ochoa"), reviewed the record and made the following findings: J.J.W. had less than marked limitation in acquiring and using information and attending and completing tasks, and she had no limitation in interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well-being. Tr. 58, 62-63. Dr. Ochoa opined that J.J.W. was able to comprehend, understand, read, and express ideas in writing, that she showed a mild expressive language delay on testing, and that she was able to maintain focus and complete tasks at school with minimal reminders. Tr. 62.

### a) Acquiring and using information domain.

Acquiring and using information concerns how well a child is able to acquire or learn information, and how well a child uses the information she has learned. This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community. 20 CFR 416.926a(g) and SSR 09-3p. Pursuant to the regulations, a preschool child should begin to learn and use the skills that will help her to read, write, and do arithmetic when she gets older. 20 C.F.R. § 416.926a(g)(2)(iii). A school-age child should be able to read, write, do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv).

Contrary to Plaintiff's argument (*see* ECF No. 10-1 at 8), the ALJ properly found that J.J.W. has no limitation in acquiring and using information. Tr. 23-24. The ALJ noted that although

7

J.J.W. showed ADHD behaviors and developmental delays in 2015, her symptoms improved with treatment. Tr. 20, 289, 292, 294. Improvement with treatment is a proper factor for the ALJ to consider in determining disability. *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished). The ALJ noted that while J.J.W. occasionally demonstrated behavioral abnormalities and some difficulties in school, she performed well academically and had not been held back at any grade level. Tr. 20-21, 24, 292, 294, 296-98. Specifically, the ALJ found that J.J.W. had an average performance in first grade, and she did well at school without behavior or attention issues. Tr. 21, 299.

Although Plaintiff cites Ms. Pfizinger's opinion as support for her argument that the ALJ erred in finding that J.J.W. has no limitation in acquiring and using information (*see* ECF No. 10-1 at 8), the reflects that the ALJ considered Ms. Pfizinger's opinion, characterized it as providing only none to slight limitations in the relevant functional domains, and properly gave the opinion some weight. Tr. 22. Even though the ALJ noted that Ms. Pfitzinger is not an acceptable medical source, she nevertheless found her opinions relevant with respect to Plaintiff's functional abilities and limitations. *Id*. As the ALJ explained, Ms. Pfitzinger's opinions were generally consistent with examinations and records from 2015 and prior, documenting Plaintiff's behavioral and ADHD-related symptoms that were affecting her ability to remain on task and appropriately interact with others, as well as delayed speech and language. *Id*. However, the ALJ explained that she gave more weight to later records documenting J.J.W.'s history of functional and behavioral delays, along with her overall good response to medications and treatment. Tr. 22.

The ALJ also considered the findings and opinion of speech language pathologist Amy Atwater, M.S., C.C.C.-S.L.P. ("Ms. Atwater"). Ms. Atwater saw J.J.W. in January 2016, J.J.W. for a consultative speech and language evaluation. Tr. 278-81. After evaluating J.J.W., Ms. Atwater concluded that her speech was 100% intelligible and that she had a mild expressive

language delay. Tr. 281.The ALJ also gave Ms. Atwater's opinion some weight, noting that her opinion is mostly internally consistent with her examination finding that although J.J.W. had a mild expressive language delay, she was within functional limitations receptive language skills and articulation skills. Tr. 22 (citing Tr. 279). However, the ALJ found that J.J.W. had additional limitations beyond those assessed by Ms. Atwater based on the evidence of record as a whole, including treatment and school records documenting a history of some age-appropriate functional and speech/language delays. Tr. 22.

The ALJ also noted there was no evidence of ongoing academic delays, recent grade level retention, or severe behavioral abnormalities resulting in frequent suspensions, expulsions, or detentions. Tr. 21. Moreover, the ALJ noted that J.J.W. reported daily activities inconsistent with disabling limitations, including participating in cheerleading, having multiple friends, and being able to care for her personal needs. Tr. 22. The ALJ also noted that J.J.W. rides a bike, knows how to use a tablet, and watches television programs. Even Plaintiff acknowledged that J.J.W.'s ability to maintain focus had greatly increased and that her condition improved with speech therapy. *See* ECF No. 10-1 at 8.

Based on the foregoing, the ALJ's findings regarding acquiring and using information are supported by substantial evidence. While Plaintiff may disagree with the ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings does not warrant remand. Even if the evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d). The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). As discussed above, there is such evidence.

### b) Attending and completing tasks domain.

Attending and completing tasks considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the mental pace at which she performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and her ability to prioritize competing tasks and manage her time. 20 CFR 416.926a(h) and SSR 09-4p. Pursuant to the regulations, a preschool child should be able to pay attention when spoken to directly, sustain attention to play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. 20 C.F.R. § 416.926a(h)(2)(iii). A school-age child should be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. 20 C.F.R. § 416.926a(h)(2)(iv).

In this domain, the ALJ found that J.J.W. had a "less than marked" limitation. Tr. 24-25. In so finding, the ALJ considered that state agency consultant Dr. Ochoa assessed less than marked limitations in this area. Tr. 25, 63. As noted above, Dr. Ochoa reviewed the record and found that, although J.J.W. showed occasional difficulty attending to tasks during a consultative examination, she also showed improved focus during the school year to the point that she could complete tasks with only minimal reminders. Tr. 62. Thus, Dr. Ochoa's opinion supported the ALJ's determination that J.J.W had less than a marked limitation in this domain.

The ALJ found similarly that, while J.J.W. had a history of aggressive behaviors and not following directions, those behaviors had improved with treatment to the point that she could finish tests in school and was noted not to have attention issues. Tr. 25. As the ALJ found, J.J.W. exhibited decreased talking and distractions after beginning ADHD medication in 2015 and reported a good ability to concentrate a year later. Tr. 20-21, 292, 299. As discussed above, by

10

March 2017, J.J.W. was taking medication only on school days, during which she was able to stay still, keep up with other children academically, and finish homework and tests. Tr. 21, 301. At the end of 2017, Plaintiff reported that J.J.W. had improved remarkably with no behavioral or performance issues at school. Tr. 21, 306.

Plaintiff disagrees with the ALJ's decision but has not identified any probative evidence the ALJ should have considered and failed to do so. Even Plaintiff's own recitation of the evidence supports the ALJ's conclusions. As Plaintiff notes, following the second quarter of the second-grade school year, J.J.W. received mostly satisfactory grades in art and technology, was progressing in math and English, adjusted well and "love[d] to learn," and was able to do "great work" when reminded to stay on task (Tr. 249-51). *See* ECF No. 10-1 at 9. Again, as Plaintiff herself reported to J.J.W.'s doctor in December 2017, J.J.W. was "doing well" with average performance at school and no complaints other than "some fidgeting" at home after school. Tr. 306. Thus, the ALJ's finding of "less than marked" limitations aligned with the evidence in the record.

As discussed above, Plaintiff's mere disagreement with the ALJ's findings does not warrant remand. The Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. The ALJ reasonably determined that J.J.W. did not have two marked limitations or one extreme limitation in functioning. The Court accordingly finds no error in the ALJ's determination that J.J.W. is not disabled.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's

12

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

    **IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE